UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HILDA MONTERO RIVERA,

                Plaintiff,

– against –

THE ESTATE OF HECTOR M. RUIZ, SR., HECTOR M. RUIZ, JR., ROSA RUIZ ARROYO, VICTORIA RUIZ, LAW OFFICES OF JOSEPH A. CAROFANO, PC, and JOSEPH CAROFANO,

                Defendants.

**OPINION & ORDER**

16 Civ. 7328 (ER)

RAMOS, D.J.:

      Hilda Montero Rivera ("Rivera") filed a complaint against the Estate of Hector Ruiz, Sr.; Hector M. Ruiz, Jr. ("Hector"), Rosa Ruiz Arroyo ("Rosa"), Victoria Ruiz ("Victoria"); and the Law Office of Joseph A. Carofano PC, and Joseph Carofano (collectively, the "Carofano Defendants") to recover her portion of the proceeds from the sale of real property in the Bronx, New York. Rivera owned the building in conjunction with, Hector, Rosa and Victoria (collectively, the "Seller Defendants"). Doc. 69 ("Sec. Am. Compl."). Rivera brings seven claims against defendants for: breach of fiduciary duty, constructive trust, conversion, civil conspiracy, aiding and abetting breach of fiduciary duty, unjust enrichment, and professional negligence. *Id.* Before the Court is the Carofano Defendants' motion to dismiss the professional negligence claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 70. For the reasons discussed below, the Carofano Defendants' motion is GRANTED.

**I.    BACKGROUND**

    **A. Factual Background**

      Rivera is an elderly woman who lives in Mayaguez, Puerto Rico. Sec. Am. Compl. ¶ 2. Rivera and the three Seller Defendants are cousins. *Id.* ¶ 12. Each of the four owned a 25% interest in a building in the Bronx, located at 1828 Gleason Avenue

(the "Property"). *Id.* ¶ 10. In February of 2016, the Property was sold to a third party, and the closing was set to take place in New York, New York. *Id.* ¶¶ 11, 13. The Plaintiff and the Seller Defendants jointly hired Carofano to be their closing attorney. *Id.* ¶ 15. Carofano was in charge of receiving and distributing the funds from the sale. *Id.* ¶ 16.

Due to Rivera's age and inability to travel, she gave her cousin, Hector Ruiz, Sr. ("Ruiz, Sr.") a statutory short form power of attorney (the "POA") to represent her at the closing. *Id.* ¶ 13. Ruiz, Sr. did not have an interest in the Property. *Id.* ¶ 12. It is uncontested that the POA granted Ruiz, Sr. with general authority to act as Rivera's agent for purposes of the sale of the Property. *Id.* ¶ 13. At the closing, Ruiz Sr. and the Seller Defendants instructed Carofano to pay Rivera 6% of the sale proceeds, and to distribute the remaining 94% equally among the Seller Defendants. *Id.* ¶ 19.

Following the sale, Rivera received a check for $35,000, but upon learning of the unequal distribution decided not to deposit the check and instead returned it. *Id.* ¶ 21. Rivera maintains that this distribution was unauthorized. *Id.* Ruiz, Sr. passed away during the course of this litigation. Doc. 15. Subsequently, Ruiz, Sr. was replaced in the current litigation by his estate. Second Am. Comp.

### B. Procedural History

Rivera commenced this action on September 21, 2016, alleging six claims against Ruiz, Sr. and the Seller Defendants. Doc. 5. All of the claims asserted in the original complaint dealt with the sale and distribution of proceeds of the Property. *Id.* On January 19, 2017, Defendants filed a suggestion of death as to Ruiz, Sr. Doc. 15. Rivera then filed a motion to amend the original complaint, substituting Ruiz, Sr. with his estate and adding one count of professional negligence against the Carofano Defendants. Doc. 21. The motion was granted with respect to adding the claim against the Carofano Defendants but denied on procedural grounds with respect to substituting Ruiz, Sr. with his estate. *See* Doc. 27. Subsequently, Rivera filed a motion for leave to file a Second Amended Complaint substituting the estate, which was agreed to by the defendants,

subject to no further amendments to the complaint until after the Court decided the anticipated motion to dismiss. Doc. 67. Rivera filed her Second Amended Complaint on February 14, 2019. Doc. 69. On March 1, 2019, the Carofano Defendants filed a motion to dismiss the one claim against them pursuant to Rule 12(b)(6), on the grounds that Rivera failed to adequately allege that they had departed from the applicable standard of care or that any such departure caused her harm. Doc. 70.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

On a motion to dismiss, the Court may consider a document that is attached to the complaint, incorporated by reference, or integral to the complaint, provided there is no dispute regarding its authenticity, accuracy, or relevance. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the

documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  Although the POA is not attached to the Second Amended Complaint, it is clearly referenced multiple times in connection with the claims brought against the Carofano Defendants.  The POA is relevant to the issue of whether the Carofano Defendants breached their duty of care and is therefore incorporated by reference.  Thus, the Court will consider the POA in deciding the present motion.

### III.   DISCUSSION

The Plaintiff argues that the Carofano Defendants committed professional negligence.  "Under New York law, '[l]egal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her professional duties negligently.'" *Lemon v. Hollinger*, No. 17 Civ. 4725 (RA), 2017 WL 6547741, at *2 (S.D.N.Y. Dec. 19, 2017) (quoting *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 700 (S.D.N.Y. 2002)); *see also Case v. Clivilles,* 216 F. Supp. 3d 367, 378–79 (S.D.N.Y. 2016) (construing a claim for professional negligence as a claim for legal malpractice under New York law).  Accordingly, the Court will construe the professional negligence claim as a claim for legal malpractice.  To state a claim for legal malpractice, the plaintiff must show that

> (1) the attorney departed from the exercise of that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community, (2) the attorney's departure from the standard of care was the proximate cause of the loss sustained by the plaintiff, and (3) the plaintiff incurred damages as a direct result of the attorney's actions.

*Friedman v. Kuczkir*, 272 F. Supp. 3d 613, 635 (S.D.N.Y. 2017) (citing *Edwards v. Haas, Greenstein, Samson, Cohen & Gerstein P.C.*, 793 N.Y.S.2d 167, 169 (2005)).

Rivera alleges that the Carofano Defendants departed from the standard of care in three ways.  *First*, she alleges that the Carofano Defendants breached the standard of care when they relied on Ruiz, Sr.'s instructions with regard to the distribution of the sale

4

proceeds. *Second*, Rivera alleges that the Carofano Defendants violated Rule 1.7 of the New York State Rules of Professional Conduct by failing to assess whether there were differing interests before agreeing to jointly represent the parties. Because there was a conflict of interest between Rivera and the Seller Defendants, the Carofano Defendants were allegedly professionally negligent in simultaneously representing antagonistic interests. Additionally, Rivera alleges that Carofano failed to inform her of the risks associated with simultaneous representation and failed to obtain written consent waiving the conflict of interest, and that these failures were the direct cause of her damages. *Third,* she alleges that the Carofano Defendants breached their duty of care by not advising Rivera of the risks associated with the POA and how to limit its authority. Second Am. Compl. ¶¶ 50–51. As discussed further below, the Court finds that the complaint fails to allege that the Carofano Defendants were professionally negligent in their representation of Rivera.

   *1. Reliance on Ruiz, Sr.'s Instructions*

"The broad authority given through the power of attorney is codified in New York General Obligations Law sections 5–1501 through 5–1602 which specifically grants attorneys-in-fact broad authority, more authority than a mere agent." *Heine v. Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt*, 856 F. Supp. 190, 194 (S.D.N.Y. 1994). Specifically, § 5–1502A of the statute states:

> In a statutory short form power of attorney, the language conferring general authority with respect to "real estate transactions," must be construed to mean that the principal authorizes the agent: . . . [t]o sell, to exchange, to convey either with or without covenants, to quit claim, to release, to surrender, to mortgage, to incumber, to partition or to consent to the partitioning, to create, modify or revoke a trust unless such creation, modification or revocation is a gift transaction governed by section 5- 1514 of this title, to grant options concerning, to lease or to sublet, or otherwise to dispose of, any estate or interest in land.

Neither party objects to the validity of the POA, and nothing in the Complaint suggests that Carofano was asked to prepare the POA. *See* Second Am. Comp. The POA was a

5

New York statutory short form that the Plaintiff signed, authorizing her cousin Ruiz, Sr. to "execute any and all documents necessary to effectuate the sale of the premises." Doc. 71, Ex. B at 3. Therefore, Ruiz, Sr. was vested with the authority under the POA to dispose of any interest that Rivera had in the Property. There is nothing to suggest that the Carofano Defendants were negligent in relying on the valid POA and in following the instructions of Rivera's designee in distributing the proceeds of the sale.

The facts of this case are similar to those of *Hein v. Newman*, where the plaintiff was selling a condominium and executed a power of attorney to a third party, as his designee, to help assist the plaintiff in the sale. *Heine*, 856 F. Supp. at 191–93. Under the power of attorney, the designee hired the defendant attorneys to represent the plaintiff and handle the closing. *Id.* At the closing, in accordance with the specific instructions of the designee, the defendants disbursed four checks payable to the designee and one check payable to the plaintiff. *Id.* The plaintiff maintained that this disbursement of the proceeds was unauthorized, and that despite the execution of the power of attorney, the defendant attorneys committed malpractice by disbursing the checks in this manner without first consulting the plaintiff. *Id.* The court found that the defendant attorneys were not negligent in relying on the instruction of the designee, and, in doing so, acted with reasonable skill and care. *Id.* at 195–96.

Similarly, here, the Carofano Defendants were not negligent in following Ruiz, Sr.'s specific instructions as to the distribution of the sale proceeds. As the Carofano Defendants suggest, clothed with the authority of the POA, when Ruiz, Sr. instructed Carofano as to how to distribute the proceeds, it was as though Rivera herself gave the instruction. There was, accordingly, no need to look behind the instruction.

2. *Malpractice for Failure to Assess Potential Conflict*
   a. *Standard of Care*

In an action for legal malpractice where a plaintiff alleges that her attorney had a conflict of interest, "the client must demonstrate that (1) a conflict existed and (2) that

6

[she] was damaged thereby." *Flycell, Inc v. Schlossberg LLC*, No. 11 Civ. 915 (CM), 2011 WL 5130159, at *4 (S.D.N.Y. Oct. 28, 2011) (internal quotation marks and citation omitted). Rule 1.7(a) of the New York State Rules of Professional Conduct provides that, "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." If such a conflict exists, Rule 1.7(b) states that, in order to represent parties with conflicting interests, a lawyer must "reasonably believe[] that [he] will be able to provide competent and diligent representation to each . . . client"; "the representation [must] not [be] prohibited by law"; "the representation [must] not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal"; and "each affected client" must give "informed consent, confirmed in writing."

The first question before the Court is whether, under the circumstances alleged in the complaint, a reasonable lawyer would conclude that the mutual representation of the Rivera and the Seller Defendants involved differing interests. There is no dispute that at the start of Carofano's representation, Rivera and the Seller Defendants each owned 25% of the Property. Second Am. Compl. ¶ 10. Carofano was hired to complete the sale of the Property, create the closing documents, and distribute the proceeds of the sale. *Id.* ¶ 16. Rivera alleges that the Carofano Defendants breached their duty of care and violated Rule 1.7 of the New York Rules of Professional Conduct by simultaneously representing differing interests with respect to the distribution of the sale proceeds. *Id.* ¶ 49. However, the complaint does not adequately allege that Carofano was told about the allegedly conflicting interests or how the Carofano Defendants could otherwise have been aware of the purported conflict. Under the facts alleged in the Complaint, the Carofano Defendants were retained to prepare the closing documents for the sale and to distribute the sale proceeds with the knowledge that each owner had a 25% interest in the Property. The Complaint fails to support the conclusion that at the onset of the Carofano

Defendants' representation of Rivera and the Seller Defendants, a reasonable lawyer would have concluded that the representation involved conflicting interests with respect to the sale proceeds. Therefore, the Court finds that the Carofano Defendants did not violate Rule 1.7 of the New York State Rules of Professional Conduct.

    b. *Proximate Cause*

Furthermore, even if the Carofano Defendants had a duty to inform Rivera of a potential conflict with the Seller Defendants, it is well settled that this "does not by itself support a legal malpractice cause of action." *Sumo Container Station, Inc., v. Evans, Orr, Pacelli, Norton & Laffan, P.C.*, 278 A.D.2d 169, 170 (N.Y. App. Div. 2000). In order to prevail on a claim of legal malpractice a plaintiff "must still establish that such a conflict caused an actual injury." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 211 (S.D.N.Y. 2010) (finding that a violation of the Code of Professional Responsibility establishes the conflict prong of a malpractice claim, but not the damages prong of the claim).

Here, Rivera's share of the sale proceeds was not a result of Carofano's purported breach of the Code of Professional Conduct. Instead, Rivera's damages were the result of Ruiz, Sr.'s fraud, if such it was, acting as Rivera's agent. It is well "established . . . that a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 624 (2d Cir. 1989) (citation omitted). And that "a principal is liable for an agent's fraud though the agent acts solely to benefit [herself], if the agent acts with apparent authority." *Id.* (internal quotation marks and citation omitted); *see Sec. Pacific Mortg. v. Herald Ctr. Ltd.*, 891 F.2d 447, 448 (2d Cir. 1989). Therefore, it would be unsound to find the Carofano Defendants negligent for relying on Ruiz, Sr.'s instructions.

Carofano's failure to assess any potential conflict between the parties and their reliance on a valid POA, then, cannot give rise to a claim for legal malpractice.

### 3. *Malpractice for Failure to Advise on the POA*

Finally, Rivera argues that Carofano should have advised her of the risks associated with the POA and how to limit the POA to better protect her interests. There are no facts to support this argument. In particular, Rivera does not allege that Carofano was hired for the purpose of advising or creating the POA. On these facts, Carofano did not have a duty to inform Rivera about the POA at all. *See Friedman*, 272 F. Supp. 3d at 635 (finding that a claim for legal malpractice cannot lie where there is no showing that "the attorney departed from the exercise of that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community"). Because Rivera has failed to allege that the Carofano Defendants had any duty of care with respect to the POA, this theory for finding legal malpractice is also insufficient.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to dismiss the Law Office of Joseph A. Carofano PC, and Joseph Carofano from this case and to terminate the motion, Doc. 70.

It is SO ORDERED.

Dated:   March 30, 2020
         New York, New York

                                                        _____
                                                        EDGARDO RAMOS, U.S.D.J.

9